UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-14088-CR-MARTINEZ/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LUIS ALBERTO HIDALGO-ALTUZAR,

    Defendant.
_____/

FILED by _____ D.C.

JAN - 7 2011

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS POST-ARREST STATEMENT [D.E. #22]

**THIS CAUSE** having come on to be heard for an evidentiary hearing on January 6, 2011 upon the aforementioned motion and this Court having reviewed the motion, the government's response, and having received testimony and evidence at the hearing, this Court recommends to the District Court as follows:

1. The motion seeks to suppress statements made by the Defendant to federal agents who questioned him subsequent to the Defendant's arrest on state charges. The motion asserts that the Defendant was arrested on October 23, 2010 by the Martin County Sheriff's Office. The record established at this hearing revealed that the Defendant was arrested by state authorities for carrying a concealed firearm, carrying a concealed weapon (knife), carrying a concealed weapon (bandana with lock attached), no driver's license, and unauthorized use of an identity card.

2. The motion goes on to state that three days later, on October 26, 2010, federal agents met with the Defendant at the Martin County Jail and questioned the Defendant concerning his alleged possession of the firearm which was one of the charges for which he was originally arrested by state authorities. The Defendant asserts that he had already been brought before the state court and had a state public defender appointed to represent him prior to the time that the federal agents met with him and questioned him concerning the possession of a firearm offense.

3. The Defendant seeks to have the statements made by the Defendant to the federal agents on October 26, 2010 suppressed. The Defendant alleges that once the Defendant had been appointed counsel on the state charges, that his Sixth Amendment right to counsel attached and that this right was violated by the federal agents interrogating the Defendant.

4. The government's response in part reflects that federal charges were not filed in this case until November 10, 2010 when the Criminal Complaint was executed before the undersigned United States Magistrate Judge. Further, the government's opposition to the motion asserts that the Defendant's appointment of counsel on his state charges did not attach to any federal charges against him since there were no federal charges pending at the time of the interview on October 26, 2010 by the federal agents. The government cites Eleventh Circuit case law for this legal precedent. This Court will discuss this in much greater detail during the analysis portion of this Report and Recommendation.

5. At the evidentiary hearing, the government called Special Agent Palfrey of Homeland Security as its only witness. Special Agent Palfrey testified that on or about October 25, 2010, his offices received a call from ATF indicating that an individual, who had been arrested on state firearm charges and other related charges, was in the Martin County Jail and that the ATF agents believed that the individual may be an illegal alien without proper documentation. Agent Palfrey did a records check and could find no record of this Defendant having legally entered the United States.

6. The following day, October 26, 2010, Agent Palfrey and Special Agent Melton went to the Martin County Jail to interview the Defendant. The Defendant was brought down to the interview room to meet with Agent Palfrey and Agent Melton. The Defendant was identified in court by Agent Palfrey as the individual who he spoke with and who executed a <u>Miranda</u> waiver in his presence.

7.Government's Exhibit No. 1 admitted into evidence at this hearing is an advice of Miranda and a Miranda waiver form which Agent Palfrey presented to the Defendant. The advice and waiver are in Spanish. Agent Palfrey identified the Defendant in court as the individual who was handed this document, told to read the document, and asked if he wished to waive his Miranda rights. The Defendant indicated that he would waive his Miranda rights and executed that document.

8.Agent Palfrey testified that the Defendant spoke perfect English and had absolutely no difficulty in communicating with Agent Palfrey and Agent Melton during the interview. This Court notes this fact since the Defendant requested, prior to his initial appearance, a Spanish interpreter. This Court has provided a Spanish interpreter at the Defendant's request at all proceedings beginning with the Defendant's initial appearance and continuing through this hearing on the Motion To Suppress. There were two court certified interpreters translating for the Defendant during this evidentiary hearing held on January 6, 2011. This Court also notes that the Pretrial Services notes provided to this Court by United States Probation Officer Weisberg prior to the Defendant's initial appearance on November 16, 2010 reflect that USPO Weisberg's interview of the Defendant was done entirely in English. The Spanish Miranda form and waiver, executed by the Defendant, was properly presented to him in his native language which he feels more comfortable utilizing during these court proceedings in spite of the fact that he does communicate in English without any difficulty.

9.During the interview on October 26, 2010, the Defendant never mentioned that he had been appointed a state public defender. Defendant's Exhibit No. 1 admitted into evidence is a copy of what the Defendant describes as a "docket sheet" from the state court. It reflects that on or about October 24, 2010 the Defendant was advised of his Miranda rights, his right to counsel, and that the state public defender was appointed to

3

represent him. Further, Agent Palfrey testified that at no time did the Defendant indicate that he wished to have his attorney or any other attorney present during questioning/interviewing by Agent Palfrey and Agent Melton.

10. After executing the Spanish Miranda form, the Defendant willingly spoke with both Agent Palfrey and Agent Melton in English. The Defendant told Agent Palfrey that he entered the country sometime during the year 2000. He slowly worked his way from the western United States over into Florida. The Defendant stated that he has no visas or other immigration documents which permit him to be in the United States. Further, the Defendant told Agent Palfrey that he has been previously ordered to be removed from the United States, but chose to illegally remain in the United States. In respect to the firearm which was seized at the time of the Defendant's arrest on state charges, the Defendant said that he bought the gun for $100 two to three years ago in West Palm Beach as protection in his work as a bouncer at a nightclub in Martin County, Florida. During the interview the Defendant was calm and forthcoming. Agent Palfrey testified that the Defendant speaks English very well. The Defendant completely understood all of the questions and made appropriate responses in respect thereto. Further, the Defendant never requested an attorney nor advised Agent Palfrey nor Agent Melton that he had been appointed a state public defender on the pending state charges.

11. Agent Palfrey testified that the reason for this interview was to determine whether or not there were any federal charges which could be brought against the Defendant. Subsequent to the interview, Agent Palfrey was to meet with AUSA Acosta to determine what, if any, federal charges could be brought against the Defendant. Therefore, no federal charges were pending against the Defendant at the time of the interview, as referenced by this Court above, since the initial Complaint filed against the Defendant was not signed until November 10, 2010.

12. On cross-examination, Agent Palfrey testified that neither he nor Agent Melton had any conversations with state authorities prior to interviewing the Defendant on October 26, 2010. They simply had received information from ATF concerning the Defendant's arrest and the belief that the Defendant may be an illegal alien possessing a firearm. The only contact that Agent Palfrey and Agent Melton had concerning the state charges was a review of the underlying arrest affidavit which set forth the underlying facts for which the Defendant was arrested on the state charges. Agent Palfrey testified that neither he nor Agent Melton had any prior information that the Defendant had been appointed a state public defender on those state charges. Further, the Defendant never mentioned to Agent Palfrey nor Agent Melton that he had an attorney or wanted an attorney present after executing the Miranda waiver.

13. The interview lasted approximately 30 to 35 minutes according to Agent Palfrey. Subsequent to the interview, the matter was reviewed with the U. S. Attorney's Office and the pending federal charges were filed.

14. Aside from Defendant's Exhibit No. 1, the Defendant presented no witnesses or evidence at the evidentiary hearing.

## ANALYSIS

15. At the outset of the hearing, counsel for the Defendant conceded that the Eleventh Circuit case law concerning these particular matters is clear and runs contrary to the Defendant's request to suppress these statements. Counsel for the Defendant pointed out that the Second Circuit and Eighth Circuit have differing opinions in this regard which would support the Defendant's argument that any statements made to Agent Palfrey by the Defendant should be suppressed. However, it is not within this Court's purview to ignore existing legal precedent as established in this Circuit.

16.     There is ample case law both in this District and within the Eleventh Circuit which holds that under very similar circumstances statements made by the Defendant are admissible.  The case of <u>United States v. Burgest</u>, 519 F.3d 1307 (11th Cir. 2008) specifically held that when a defendant, in a single act, violates the peace and dignity of two sovereigns (state and federal) by breaking the laws of each, he has committed two distinct offenses for purposes of Sixth Amendment right to counsel.  In <u>Burgest</u>, the defendant's state drug charge was a different offense than his federal drug charges for Sixth Amendment purposes.  The Eleventh Circuit found that the defendant's prior invocation of his right to counsel for the state drug charge did not attach to the uncharged federal drug offense at the time that the federal agents interviewed him. Consequently, the federal agents' questioning of the defendant which occurred after the defendant's voluntary waiver of his right to counsel and which did not consist of any questions concerning the pending state drug charge, did not violate his Sixth Amendment right to counsel.

17.     In <u>United States v. Harris</u>, 526 F.3d 1334 (11th Cir. 2008), the Eleventh Circuit held that the fact that an accused had been assigned an attorney on state charges against him did not mean that his right to counsel had attached as to federal offenses on which the federal agents questioned him while in state custody.

18.     In <u>United States v. Knight</u>, 562 F.3d 1314 (11th Cir. 2009), it was held that an accused's Sixth Amendment right to counsel is offense specific. It cannot be invoked once for all future prosecutions because it does not attach until prosecution is commenced, that is, at or after the initiation of adversary judicial proceedings whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.  Invocation of the right to counsel for a state charge does not invoke the right for an identical federal charge.  The Eleventh Circuit in <u>Knight</u> went on to state that the defendant voluntarily, knowingly and intelligently waived his right to remain silent and his right to counsel before being

6

interrogated by federal law enforcement authorities. The defendant in Knight was informed of his Miranda rights, he responded that he understood those rights and wished to speak with the federal agents. Although the defendant had previously invoked his right to counsel on state charges, he indicated that he probably would not hire the same attorney to defend him on the federal case.

19. In this case before the Court, the Defendant did not even mention to agents that he had been appointed an attorney or was requesting an attorney or contemplating the hiring of an attorney. Agent Palfrey's testimony made it clear that he explained that he was a federal agent and why he and Agent Melton were there to speak with the Defendant concerning possible federal charges arising out of the same facts and circumstances for which the Defendant was in custody on state charges. As in Knight, the Defendant was advised of his Miranda rights in his native language, read those advice of rights, voluntarily waived those and agreed to speak with the agents. There were no federal charges pending against the Defendant on October 26, 2010 to which his Sixth Amendment right could attach. His court appointment of counsel on his state charges does not apply to federal charges which were not even pending at that time. See also United States v. Godwin, 2010 WL 4135201 (S.D. Fla. 2010).

20. Finally, in United States v. Jackson, 292 Fed. Appx. 770 (11th Cir. 2008), the Eleventh Circuit once again reasserted the concept of dual sovereignty. In Jackson, the Eleventh Circuit stated that an uncharged federal offense of being a felon in possession of a firearm was separate from the same charge under state law. Thus, while the defendant's Sixth Amendment right to counsel attached to the state court proceeding at the time federal agents interviewed him, his right to counsel for the charged state offense did not attach to the federal charge. This is the same factual situation that we have before us in this case since the Defendant is charged by Indictment in this matter with being an

7

alien illegally an unlawfully in the United States in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g)(5)(A).

21. Based upon the evidence received by this Court, there is no doubt that the Eleventh Circuit legal precedent applies in this situation. There is no evidence that the Defendant was not able to understand his Miranda rights as presented to him in Spanish by the federal agents prior to the interview. As noted by this Court previously herein, the Defendant has requested a Spanish-speaking interpreter during all pre-trial proceedings. His Miranda waiver was executed in that native language, being Spanish. The Defendant told the agents that he was from Mexico. The Defendant was able to fully converse with the agents in English without any difficulty during the interview. There is no evidence that the Defendant was forced, tricked, or otherwise coerced into executing the Miranda waiver. The only evidence before this Court is that the Defendant freely and voluntarily waived his Miranda rights and agreed to speak to Agent Palfrey and Agent Melton.

22. There were no federal charges pending at the time of the interview on October 26, 2010. This Court finds that the Defendant's Sixth Amendment right to counsel did not attach to these later-filed federal charges simply because he had been appointed state counsel on his pending state charges. The case law recited by this Court is clear in that regard. This Court finds further that the Defendant freely and voluntarily waived his Miranda rights, never requested counsel, and all statements made by him during the interview on October 26, 2010 are admissible.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Motion To Suppress Post-Arrest Statement [D.E. #22] be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** this 7th day of January, 2011, at Ft. Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc:
Hon. Jose E. Martinez
AUSA Christopher Parente
AFPD Fletcher Peacock